IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 1:13-cr-28 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| MAURICE LEBRON DAVIS, a/k/a MAURICE PRINGLE | : | |
| | : | |
| Defendant. | : | |

## **MEMORANDUM**

## **April 12, 2019**

Presently pending before the Court is Defendant Maurice Davis's ("Defendant") Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 121). The Motion has been fully briefed, (Docs. 122, 128), and is ripe for our review. For the following reasons, we will deny Defendant's Motion.

**I.     BACKGROUND**

Defendant was indicted on February 20, 2013, and charged with ten counts of interference with commerce by robbery, referred to as Hobbs Act Robbery, in violation of 18 U.S.C. § 1951. Defendant pled not guilty, and on April 8, 2015, after a four-day trial, was convicted by a jury on Counts 1 through 4, and 7 through 10. The jury acquitted Defendant on Counts 5 and 6.

The United States Probation Office scored Defendant's total offense level as 33, and his criminal history category as VI, giving him an advisory guideline sentencing range of 235 to 293 months. On October 19, 2015, the Court sentenced Defendant to 235 months on each count of conviction, to be served concurrently. Defendant subsequently appealed his conviction to the Third Circuit, which affirmed the verdict on October 18, 2016.

## II. DISCUSSION

The Defendant states several grounds in support of his motion. In grounds one, seven, and eight, Defendant argues that subsequent case law from the United States Supreme Court justifies vacating his conviction and sentence. In grounds two, four, five, and six, Defendant asserts ineffective assistance of counsel. Finally, Defendant claims he is factually innocent of certain counts in ground three. We will begin with Defendant's arguments related to new case law from the Supreme Court.

### A. Subsequent Supreme Court Case Law

Defendant cites three subsequent decisions of the Supreme Court as various grounds for vacating his conviction. First, Defendant argues that under *Carpenter v. United States*, 138 S.Ct. 2206 (2018), officers violated his Fourth Amendment rights by obtaining his cell-site location information without first securing a warrant. Second, Defendant asserts that *Sessions v. Dimaya*, 138 S.Ct. 1204

(2018), effectively nullifies his status as a career offender because, he argues, the Supreme Court held that a Hobbs Act robbery is a non-violent offense. Finally, Defendant suggests that his four-level enhancement for use of a dangerous weapon and his four-level enhancement for abduction of a person to facilitate a crime must fall following the Supreme Court's decision in *Nelson v. Colorado*, 137 S.Ct. 1249 (2017). We will address each argument in turn.

### 1. *Carpenter v. United States*

In *Carpenter v. United States*, law enforcement officers obtained cell-site location information for the defendant without securing a warrant to investigate a string of robberies. 138 S.Ct. at 2212-13. Because the facts in *Carpenter* are squarely on point with the matter before us, we will not discuss the Court's reasoning in depth. Rather, for our purposes, what matters most is the Court's holding that individuals have a reasonable expectation of privacy in their cell-site location information and that obtaining such information constitutes a search requiring a warrant. *Id.* at 2220. Defendant argues, therefore, that officers' failure to obtain a warrant before acquiring his cell-site location information constituted an illegal search.

Although Defendant is correct that, following the Court's decision in *Carpenter*, such searches require a warrant, we must note that *Carpenter* not only stated new law but also was handed down after Defendant's conviction and

sentencing. Thus, we must consider whether *Carpenter* applies to Defendant's case retroactively on collateral review. The Government argues that it does not.

The Government suggests that *Carpenter* does not have retroactive effect, in general.[1] Under the principles set forth in *Teague v. Lane*, 489 U.S. 288 (1989), "the retroactivity of our criminal procedure decisions turn on whether they are novel." *Chaidez v. United States*, 568 U.S. 342, 347 (2013). "When we announce a 'new rule,' a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding." *Id.* The Supreme Court recognizes two exceptions to the *Teague* formulation: "watershed" procedural rules and new rules that implicate the type of individual conduct the government may proscribe (i.e., a substantive, rather than procedural, rule). *Teague*, 489 U.S. at 311.

As to whether the rule in *Carpenter* is new, we must determine whether the decision states a rule that "was not *dictated* by precedent existing at the time the defendant's conviction became final," in opposition to "merely an application of the principle that governed" a prior matter. *Chaidez*, 568 U.S. at 347-48 (quoting *Teague*, 489 U.S. at 301, 307) (emphasis in the original). The *Carpenter* decision clearly carves out a new understanding of the Fourth Amendment, as it applies to wireless data. The Court did not merely apply prior case law to the facts before it;

---

[1] The Government also argues that even if *Carpenter* does have retroactive effect, Defendant here was not deprived of a full and fair chance to litigate his Fourth Amendment claim. Because we find that *Carpenter* is not retroactive, as we will discuss, we need not address the Government's second argument.

the Court stated a new principle on the type of conduct that constitutes a search. Thus, we find that *Carpenter* states a new rule. We further find that the exceptions in *Teague* do not apply. First, the new rule is plainly procedural; that is, the rule does not concern the range of an individual's conduct that the government may punish, but specifically addresses the procedural mechanism required for the police to obtain certain information. Second, the new rule does not appear to be a watershed rule of criminal procedure. A "watershed" rule goes to "the *bedrock procedural elements* that must be found to vitiate the fairness of a particular conviction," such as a right to counsel at trial. *Teague*, 489 U.S. at 311 (quoting *Mackey v. United States*, 401 U.S. 667, 693-94 (1970)) (emphasis in the original). The new rule stated in *Carpenter* simply does not rise to that level. Thus, under the guidance of *Teague*, the rule in *Carpenter* is not effective retroactively, and Defendant here cannot rely on it to collaterally challenge his conviction.

### 2. *Sessions v. Dimaya*

Defendant next argues that Hobbs Act robbery is no longer a crime of violence under *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018), invalidating his status as a career offender.[2] In *Sessions*, the Supreme Court held that 18 U.S.C. § 16(b), which defines a crime of violence as "any other offense that is a felony and that, by

---

[2] Although Defendant's status as a career offender did not increase his total offense level, it did result in a higher criminal history category.

its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" is unconstitutionally vague. 138 S.Ct. at 1216. The Court in *Sessions* did not explicitly find that a Hobbs Act robbery is a non-violent crime. Furthermore, the *instant* charge of conviction has no bearing on Defendant's status as a career offender. We look, instead, to Defendant's *prior* convictions. Career offender status requires "at least two prior felony convictions for either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Here, the Probation Officer relied on two Maryland convictions in determining Defendant's career offender status: a drug distribution conviction and an armed robbery conviction. Giving Defendant the benefit of the doubt, we will construe his argument as challenging whether the Maryland robbery conviction, as opposed to the present Hobbs Act robbery conviction, is a crime of violence.

In Maryland, common law robbery with a dangerous weapon requires that "the State . . . prove *beyond a reasonable doubt*, number one, that there was a robbery, and number two, that it was committed with the *use* of a deadly or dangerous weapon." *United States v. Redrick*, 841 F.3d 478, 483 (D.C. Cir. 2016) (quoting *Battle v. State*, 499 A.2d 200, 203 (Md. Ct. Spec. App. 1985)) (emphases in the original). Although Maryland does not explicitly identify "arming" as an element of robbery with a dangerous weapon, the state "treats this issue exactly as

if it were an element under federal law." *Redrick*, 841 F.3d at 483. This requirement takes the conviction out of the realm of the unconstitutionally vague language of 18 U.S.C. § 16(b) and places is squarely in the still valid language of § 16(a), where a crime of violence is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). Defendant's Maryland conviction for armed robbery, therefore, constitutes a crime of violence that is a valid predicate for his career offender status. Thus, application of the career offender status to Defendant was proper.

### 3. *Nelson v. Colorado*

Defendant further suggests that under *Nelson v. Colorado*, 137 S.Ct. 1249 (2017), his enhancements to Counts 1, 4, and 7 for using or brandishing a dangerous weapon, and his enhancements to Counts 1, 3, 4, and 7 for abducting another person to facilitate commission of the offense were improperly applied. The Court is entirely at a loss as to how Defendant reaches his conclusion upon reading the Supreme Court's decision in *Nelson*, which pertains only to refunding costs, fees, and restitution when a defendant is exonerated after a wrongful conviction. Nothing in the Court's *Nelson* opinion addresses the enhancements Defendant now challenges.

Furthermore, we find that both enhancements were applied appropriately. Regarding the dangerous weapon enhancements, four levels were added to Counts 1 and 4 because the dangerous weapon "was otherwise used" and three levels were added to Count 7 because the dangerous weapon was "brandished or possessed." U.S.S.G. § 2B3.1(b)(2)(D) & (E). A dangerous weapon includes "an object that is not an instrument capable of inflicting death or serious bodily injury but . . . (II) the defendant used the object in a manner that created the impression that the object was such an instrument." U.S.S.G. § 1B1.1, app. n. 1(E). To "otherwise use" such a weapon means "that the conduct did not amount to the discharge of a [dangerous weapon] but was more than brandishing, displaying, or possessing" such a weapon. *Id.* at app. n. 1(J). Brandishing a weapon involves displaying the weapon or making its presence known "in order to intimidate that person, regardless of whether the weapon was directly visible to that person." *Id.* at app. n. 1(C).

In the robbery in Count 1, Defendant wrapped his hand in a pillow case in a manner that suggested he had a weapon and threatened to kill the employees of a Chick-fil-A in Mechanicsburg, Pennsylvania, if they did not give him money. (Doc. 84 at ¶ 4). In the Count 4 robbery, Defendant raised a hammer in a threatening manner while attempting to rob a Burger King in Harrisburg, Pennsylvania. (*Id.* at ¶ 9). Finally, in the robbery in Count 7, Defendant placed his hand in his jacket pocket as if he had a handgun and threatened to kill employees

of another Burger King in Harrisburg, Pennsylvania. (*Id.* at ¶ 10). The conduct in all three counts plainly satisfies the definitional formulation for the enhancements to apply.

Moving to the four-level "abduction" enhancements, the Sentencing Guidelines define "abduction" simply as a "victim [being] forced to accompany an offender to a different location." U.S.S.G. § 1B1.1 app. n. 1(A). In each of the counts where the enhancement was applied, Defendant forced employees into the restaurant, or to different parts of the restaurant, under threat of harm. Again, this plainly satisfies the definition of abduction under the sentencing guidelines. We therefore see no basis for finding that the enhancements were improper.

### B. Ineffective Assistance of Counsel

Defendant next argues ineffective assistance of counsel on various grounds. First, Defendant suggests that his trial counsel should have requested a suppression hearing related to the cell-site location information. Next, Defendant asserts that his trial and appellate counsel were ineffective by not objecting to, or raising on appeal, the absence of a burglary instruction in the charge to the jury. Finally, Defendant suggests that his trial counsel failed to object to the "dangerous weapon" and "abduction" enhancements in his presentence investigation report.

The United States Supreme Court set forth a two-prong analysis for determining whether a defendant has received ineffective counsel. First, we

9

determine whether counsel's performance "fell below an objective standard of reasonableness," then we consider whether "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To show prejudice, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Because this matter is brought on a § 2255 motion, the burden remains on the defendant. *See United States v. Eakman*, 378 F.3d 294, 302 (3d Cir. 2004) ("[A]t the [§ 2255] hearing the prisoner retains the burden to demonstrate that he is entitled to relief."). We will begin with a discussion of whether the performance of Defendant's counsel fell below the objective standard of reasonableness.

On all of Defendant's points, we find that his counsel's performance was reasonable. First, regarding the cell-site location information, as noted earlier, the rule requiring a search warrant for such information was handed down well after Defendant's trial and conviction. Defendant's counsel had no reason to think he had a legal basis to suppress the information because the Supreme Court had not yet carved out its new rule. Indeed, under the prevailing case law at the time, obtaining such information without a warrant was presumably valid, precipitating

the need for the new rule. With respect to his counsel's decision not to object to the weapon and abduction enhancements, we again find such conduct reasonable. As discussed above, the relevant underlying conduct plainly fit the definitional formulation for the enhancements. To object would serve no functional purpose.

Finally, we see no sub-standard performance from either Defendant's trial or appellate counsel in not objecting to the absence of a burglary instruction. Quite simply, Defendant was not charged with burglary, and burglary is not a lesser included offense of robbery. Defendant's argument that his original charge on arrest by the state authorities was burglary is of no moment. He was indicted in federal court on robbery charges. Burglary is a distinct offense that has no relevance to the charges for which he was tried and convicted. It would have been wholly inappropriate for the Court to include a burglary instruction in the final charge to the jury. Consequently, counsel at trial and on appeal had no basis to object to, or argue against, the absence of such an instruction.

Because we find that the conduct of Defendant's counsel did not fall below an objective standard of reasonableness, we need not consider whether Defendant was prejudiced by his counsel's conduct.

### C. Claim of Innocence

Finally, Defendant claims he is "factually and legally innocent" of the conduct in Counts 2, 5, 6, 8, and 9. He argues that the indictment charged him

11

with robbery for each of these counts, and that robbery requires the presence of another person.  Defendant suggests that the five aforementioned counts did not involve the presence of another person, thus indicating a failure to meet all of the elements of Hobbs Act robbery.  Defendant further suggests that his conduct indicates burglary, not robbery, and again underscores that he was originally charged by the state with burglary.

Initially, we can immediately disregard Defendant's argument regarding Counts 5 and 6 because he was acquitted on those counts.  Additionally, regarding Count 9, we note that an employee was, in fact, present, and Defendant attempted to move the employee into the store before the employee fled.  (Doc. 84 at ¶ 14). Thus, the requirement that another be present is satisfied.  Counts 2 and 8 show less of a presence of another; however, it is important to note that the indictment contemplated both completed and *attempted* robbery.  The Government showed at trial that Defendant had consistently targeted the restaurants in the early morning hours, suggesting a *modus operandi* of preferring to rob the stores during the early shift.  Based on this *modus operandi*, the jury could reasonably find that Defendant intended to rob the stores during the early morning shift but had failed, and that such evidence sufficed to show attempted robbery.  We further note that the Third Circuit reviewed the sufficiency of the evidence on Defendant's appeal of his

conviction and affirmed the jury's verdict. *United States v. Davis*, 664 F.App'x 150 (2016). We certainly see no basis to find differently on collateral review.

## III. CONCLUSION

For the foregoing reasons, the Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody (Doc. 121) shall be denied. An appropriate Order shall issue.